```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
SERVICE EMPLOYEES INTERNATIONAL    :    04 Civ. 9580 (CSH)
UNION, LOCAL 32BJ                  :
                                   :
              Plaintiff,           :
                                   :
     -against-                     :    MEMORANDUM OPINION
                                   :         AND ORDER
COBY GRAND CONCOURSE, LLC,         :
                                   :
              Defendant.           :
------------------------------------------------------------- x
```

HAIGHT, Senior District Judge:

Plaintiff Service Employees International Union, Local 32BJ ("the Union" or "Plaintiff") filed a complaint seeking to confirm an arbitration award issued in favor of Union member Aan Stanton and against the defendant Coby Grand Concourse, LLC ("Coby" or "Defendant"), Stanton's employer. Coby answered the complaint, and counter-claimed that the arbitration award should be vacated. Both Plaintiff and Defendant have filed cross-motions for summary judgment (plus attorneys' fees and costs), and the parties have submitted stipulations of fact which they assert represent all material facts in this action and are not in dispute. For the following reasons, I grant Defendant's motion for summary judgment and vacate the arbitration award, and deny Plaintiff's motion to confirm the award. The parties shall bear their own attorneys' fees and costs.

## BACKGROUND

For many years, the Union or its predecessors have represented the building services employees working at the residential property located at 1777 Grand Concourse, Bronx, New York ("the Building") under a series of collective bargaining agreements. Stipulations of Fact

("Stip.") ¶ 1.  After the current collective bargaining agreement ("the CBA") was executed on March 7, 2003 (expiring March 14, 2005) (*see id.* ¶ 2), the owner of the Building sold the Building to Coby.  The sales agreement for that transaction did not list the CBA as an obligation to be assumed by the purchaser, Coby.  *See id.* ¶ 5.  After the purchase, the Union sent Coby a letter, requesting that Coby execute an assumption agreement, to formally adopt the CBA; Coby did not execute the proffered assumption agreement.  *Id.* ¶ 6.  Nonetheless, Coby apparently maintained the existing services staff, and continued to operate according to the terms of the CBA: Coby paid wages according to the CBA, including scheduled wage increases; Coby paid health benefit fund contributions according to the CBA, including scheduled contribution increases; Coby paid pension benefit fund contributions according to the CBA, including scheduled contribution increases; Coby transmitted union dues withheld from employees' wages to the Union consistent with the check-off provisions of the CBA; Coby responded to Union grievances filed on behalf of service workers, and met with Union representatives in an effort to adjust those grievances; and Coby paid vacation benefits, sick leave, and contractual holiday pay consistent with the terms of the CBA.  *Id.* ¶¶ 7-12.

At some point after Coby's purchase of the Building, it discharged building services employee and Union member Aan Stanton.  Thereafter, on or about April 9, 2004, the Union notified Coby of its intent to arbitrate, pursuant to the arbitration provision of the CBA, the propriety of Stanton's discharge (as well as Coby's purported failure to pay Stanton unused sick leave time).  *Id.* ¶ 14.  To that date, it was the only grievance arbitration sought by the Union against Coby.  *Id.*  Coby does not deny that it received the Union's notification; however, Coby took no action in response.

The Union sent its notification of intent to arbitrate to Coby and to arbitrator Robert Herzog,[1] who the Union had selected to arbitrate the dispute. *See id.* ¶ 15. Herzog then wrote a letter to both the Union and Coby setting a date for the arbitration, to take place at the Union's offices. *Id.* ¶ 16. Coby does not dispute that it received the arbitrator's notification of the hearing date. *Id.* ¶ 17. Nonetheless, Coby, who had not retained counsel in the matter, took no action to stay or protest the proposed arbitration, nor to inform the Union or the arbitrator of a scheduling conflict. *See id.* ¶¶ 18, 21-22.

When the date for the arbitration arrived, the arbitrator and Union representative were present at the appointed time and location, but no representative of Coby appeared. *Id.* ¶ 23. After waiting for 30 minutes, the arbitrator, Robert Herzog, personally telephoned the office of Aries Management, Coby's management company, and spoke with Katrina Curanaj, who is Aries Management's property manager responsible for Coby's properties. *Id.* ¶ 24. Curanaj informed Herzog that she would not be able to attend the arbitration hearing because she was scheduled to appear before the Environmental Control Board on another matter. *Id.* Herzog told Curanaj that if no representative of Coby appeared the arbitration "would then proceed as an Ex Parte Default Hearing." Arbitrator's Default Award, attached to Complaint to Enforce Arbitration Award as Ex. C, at 3. Curanaj then agreed to attend the arbitration, and made her way to the appointed location. *See* Stip. ¶ 26. After appearing and stipulating to certain documents being entered into evidence, Curanaj requested a recess to retrieve additional relevant documents from her office. *Id.* ¶¶ 27-28. The arbitrator granted the recess, and Curanaj returned to her office, where she

---

[1] Herzog was not on the list of arbitrators to whom disputes could be referred under the CBA. This is discussed in more detail *infra*.

learned through a telephone call that her father required her help as a translator for him to report to the New York Police Department about the theft of his automobile the night before. *Id.* ¶ 29. Curanaj then called the arbitration hearing room, and explained to Arbitrator Herzog that she could not return to the hearing due to a family emergency; the arbitrator refused Curanaj's request to adjourn the hearing until the following day. *Id.* ¶ 30. After no Coby representatives returned to the arbitration, the arbitrator proceeded with the arbitration based solely on the *ex parte* testimony of Stanton. *Id.* ¶ 31.

The following day, Arbitrator Herzog notified Coby of his intention to issue a default award unless Coby could substantiate the exigent circumstances which prevented Coby's representative from returning to the hearing. *Id.* ¶ 33. Curanaj then sent Herzog a police "Incident Information Slip," which provided certain information about the report of the theft of the automobile, but did not mention Curanaj's presence as a translator for her father on the day of the arbitration hearing. *Id.* ¶ 34. After telephoning the police station and making certain queries regarding the car theft, Arbitrator Herzog concluded that Curanaj's absence from the hearing was not justified, and Herzog thereafter issued a default award in favor of the Union and Stanton, ordering reinstatement of Stanton, as well as other monetary relief. *Id.* ¶¶ 35-36. In order to mitigate damages, Coby reinstated Stanton, but has not complied with the remainder of the arbitrator's award. *Id.* ¶ 37.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleading, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Cattrett*, 477 U.S. 317 (1986). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995). The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If there is "any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party," then summary judgment should be denied. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

As mentioned above, in this action, the parties submit that their joint stipulations of fact encompass all facts material to the case, and that there are no outstanding issues of fact to be resolved by the trier of facts. *See* the parties' Local Rule 56.1 Statements.

## II. Agreement to Arbitrate

Defendant argues, *inter alia*, that the arbitration award should be vacated because Defendant never agreed to arbitrate disputes in the first place. *See* Memorandum of Law on Behalf of Defendant in Opposition to Motion for Summary Judgment by Plaintiff ("Def. Opp.

Mem.") at 6-9. Plaintiff, however, points to the CBA as the source of the asserted obligation to arbitrate labor disputes. *See* Plaintiff/Counter-Defendant's Memorandum of Law in Support of Cross-Motion for Summary Judgment ("Plaint. Main Mem.") at 6. Paragraph 17 of the CBA does indeed specify that, "[i]n the event any dispute, difference, controversy or grievance [arising under the CBA] cannot be settled between the parties, it is agreed that the dispute, difference, controversy or grievance shall be referred for arbitration . . . ." Collective Bargaining Agreement ¶ 17.

Coby counters that, while the CBA does contain an arbitration proceeding, it is not bound by the CBA, as it never agreed to assume that agreement, which was executed by the Union and the prior owner of the Building. *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Main Mem.") at 9-13. In support of this position, Coby cites *N.L.R.B. v. Burns Int'l Sec. Serv., Inc.*, 406 U.S. 272 (1972). In that case, the Supreme Court stated that, in situations where a successor employer hires all of the predecessor employer's workers, the successor employer may be obligated to recognize the workers' union for bargaining purposes, but the successor employer is not automatically bound by the predecessor employer's collective bargaining agreement with the workers' union. *See Burns*, 406 U.S. at 281-284. Coby also cites *Howard Johnson Co. v. Detroit Local Joint Executive Bd.*, 417 U.S. 249, 264 (1974) (purchaser not required to arbitrate with the union representing the seller's employees absent express or implied adoption of the agreement requiring arbitration).

However, the propositions for which the Union cites *Burns* and *Howard Johnson* are inapposite in cases where the successor employer or buyer has, in fact, assumed the collective bargaining agreement, either explicitly or implicitly. In the case at bar, the Union concedes that

6

Coby never explicitly adopted the CBA. *See* Stip. ¶ 6. However, while the Court of course should not impose the obligations of a contract onto a party who has not agreed to or adopted said contract, the case law and the facts presented here support a finding that Coby did, in fact, *implicitly* assume the CBA, primarily by acting in conformity with the provisions and obligations of that agreement in all respects. Most tellingly, Coby, upon purchase of the Building, not only continued to pay Union workers at the prevailing wage and make contributions to both health and pension funds at the prevailing rates specified in the CBA, but paid wage and fund contribution rate increases in accordance with the very schedule specified in the CBA. *Id.* ¶¶ 7-9; *see N.L.R.B. v. Amateyus, Inc.*, 817 F.2d 996, 997-98 (2d Cir. 1987) (successor employer found to have adopted predecessor's collective bargaining agreement where it, *inter alia*, complied with that agreement regarding hours, wages, holidays, and layoff procedures; "The record indicates . . . that [the successor employer] did not bargain with the [union] over the initial terms but instead chose to adhere to the terms of the [union]'s agreement with [the predecessor employer]. On these facts, the NLRB was perfectly entitled to find that [the successor employer] operated in accordance with the collective bargaining agreement and intended to adopt it."); *see also Southern California Painters & Allied Trade Dist. Council No. 36 v. Best Interiors, Inc.*, 359 F.3d 1127 (9th Cir. 2004) ("To determine whether a party has adopted a contract by its conduct, the relevant inquiry is whether the party has displayed conduct manifesting an intention to abide by the terms of the agreement.") (internal quotation marks and citation omitted).

Further, Coby continued to withhold funds for union dues from employees' wages and transmit those funds to the Union consistent with the check-off provisions of the CBA (*see* Stip. ¶ 10), and has also continued to pay vacation benefits, sick leave, and contractual holiday pay

consistent with the terms of the CBA since the purchase of the building (*see id.* ¶ 12). *See United States Can Co. v. N.L.R.B.*, 984 F.2d 864, 869-70 (7th Cir. 1993) (Board decision that successor employer had assumed agreement upheld, based in part on court's view that dues check-offs and deductions imply the "existence of a real *agreement*" between employer and union) (emphasis in original); *Amateyus*, 817 F.2d at 997-998.

As asserted evidence of its intent *not* to assume the CBA, Coby emphasizes that it declined the Union's request that Coby explicitly assume the CBA by executing an assumption agreement. *See* Def. Opp. Mem. at 2; Stip. ¶ 6. However, this sort of conduct is not dispositive on the issue of whether a party implicitly assumed an agreement. *See Brown v. C. Volante Corp.*, 194 F.3d 351, 356 (2d Cir. 1999) (assumption of agreement found even where employer did not execute CBA after receiving letter from union requesting that it do so). Coby has not even alleged that it made any statements expressly disavowing the obligations of the CBA, or making it known that it in no way would assume that contract, let alone produced or cited to any evidence of such statements.[2] Given Coby's conduct in complying with all relevant terms of the CBA, including (and most tellingly) wage and fund contribution rate increases specified in the CBA schedule, coupled with the complete absence on the record of any express disavowals by Coby, I find that, based upon the specific facts of this case, Coby implicitly adopted the CBA.

---

[2] While not necessarily required in order for an employer to defeat a union's claim that the employer implicitly assumed a pre-existing agreement, in this case it seems reasonable that Coby would have made some sort of express statement that, although it had been or would be complying with the CBA in many respects, it was not adopting or assuming that agreement. For example, Coby only pointed to its *inaction* in not signing the assumption agreement; it did not (presumably because it could not) provide the Court with, say, a letter written to the Union, in response to the Union's request for execution of the assumption agreement, informing the Union that Coby would not execute the assumption agreement because Coby refused to assume the CBA.

8

As a result, Coby was bound to arbitrate certain disputes according to the CBA's terms.

## III. Selection of Arbitrator

The Court's conclusion that Defendant did adopt the CBA, however, does not necessarily mean that the arbitration award at issue in this case should be enforced. Defendant also argues that the arbitration in this matter is without effect because arbitrator Robert Herzog had no jurisdiction to hear the dispute, as he was not one of the arbitrators named in the CBA. *See* Def. Main Mem. at 14-19. Indeed, Plaintiff concedes that Herzog was not listed as one of the arbitrators to whom disputes could be referred under the CBA.[3] Stip. ¶ 13. For reasons about which the Court can only speculate, the Union decided to ignore the living arbitrator specified in the CBA, and instead unilaterally selected a different arbitrator to hear the Stanton dispute. Case law in this Circuit supports vacating an arbitration award where the arbitrator acted without authority because he was not selected in accordance with the methods specified in the parties' agreement. *See, e.g., Avis Rent a Car System, Inc. v. Garage Employees Union, Local 272*, 791 F.2d 22, 25 (2d Cir. 1986) ("[A]n award will not be enforced if the arbitrator is not chosen in accordance with the method agreed to by the parties.") (citation omitted). "Courts generally enforce such [arbitration] clauses strictly, vacating awards entered by arbitrators whose qualifications or method of appointment fail to conform to arbitration clauses." *Id.* (collecting cases). Since the unilaterally selected arbitrator in this case was chosen in complete contravention of the arbitration provision of the CBA, the arbitrator's award was without effect,

---

[3] The CBA specified only two arbitrators to whom disputes could be referred, Roy Barnes and George Sabatella (Collective Bargaining Agreement ¶ 17(b)), one of whom was reportedly deceased at the time of the arbitration at issue in this case. The CBA did not specify a procedure for replacing or adding additional arbitrators to the list.

9

and is therefore vacated.[4]  *See* 9 U.S.C.§ 10(a)(4).

The Court need not reach the remainder of Defendant's arguments regarding the allegedly improper actions of the arbitrator.

## **CONCLUSION**

Based on the foregoing, Defendant's motion for summary judgment vacating the arbitration award is granted, and Plaintiff's cross-motion for summary judgment enforcing the arbitration award is denied.  Each party shall bear its own attorneys' fees and costs.

---

[4] Plaintiff argues that the Defendant's actions (and lack thereof) functioned to waive any objection to the jurisdiction of the arbitrator that Defendant might have had.  Specifically, the Union alleges that Defendant's failure to object to the selection of Herzog as arbitrator, either before or during the arbitration, while voluntarily appearing at the hearing and participating in the hearing on the merits, precludes Coby from now arguing that the arbitrator lacked jurisdiction. *See* Plaint. Main Mem. at 6-7, 10-12.  However, given the facts of this case, the Court finds Coby's actions (or alleged inactions) insufficient to waive its jurisdictional objection.  In the first place, Coby's representative, Curanaj, had no intention of attending, and apparently had not prepared for, the arbitration hearing, and only made her way to the hearing location after Arbitrator Herzog telephoned her and threatened that the arbitration would "proceed as an Ex Parte Default Hearing" if no representative of Coby appeared.  Arbitrator's Default Award at 3. Curanaj, without benefit of legal counsel, then appeared at the arbitration hearing for only a short time, before leaving to retrieve additional relevant documents from her office (Stip. ¶¶ 27-28), following which, as discussed in text *supra*, she never returned to the hearing.  The arbitration then proceeded on an *ex parte* basis, resulting in a "Default Award".  Arbitrator's Default Award at 1.  Curanaj's pressured, minimal, unprepared-for appearance at the arbitration, before an unauthorized arbitrator, is not on par with the fact situations presented in cases cited by Plaintiff, where informed representatives of a party actively and fully participated in an arbitration proceeding on the merits, and only objected to the arbitrator's power to act after that arbitrator issued an unfavorable decision.  *See, e.g., Int'l Longshoremen's Ass'n v. West Gulf Marine Ass'n*, 594 F. Supp. 670 (S.D.N.Y. 1984); *see also Agco Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000) ("If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter.").  The case at bar is not one where Defendant is attempting to get two bites of the apple.

It is SO ORDERED.

Dated: New York, New York
March 16, 2006

/s/ Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE